FILED
2019 Nov-07 PM 09:22
2019 Oct-29 PM 09:22
U.S. DISTRICT COURT
N.D. OF ALABAMA



# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## NORTHWESTERN DIVISION

| | | |
|---|---|---|
| EVA BLAIR CRITTENDEN, | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| vs. | ) | **Case No. 3:19-cv-01242-HNJ** |
| | ) | |
| QUAD CITIES TAXI & LIMO, | ) | |
| CARBINE ENTERPRISES, INC., | ) | |
| BRYAN CARBINE, and | ) | |
| ALABAMA PUBLIC SERVICE | ) | |
| COMMISSION, | ) | |
| | ) | |
| **Defendants.** | ) | |

## SECOND AMENDED COMPLAINT

### I.    INTRODUCTION

Plaintiff, Eva Blair Crittenden (hereinafter, "Plaintiff" or "Ms. Crittenden"), files this Title III, Americans with Disabilities Act (hereinafter, "ADA") action against Defendants, Quad Cities Taxi & Limo, Carbine Enterprises, Inc., Bryan Carbine, and Alabama Public Service Commission (hereinafter, "Defendants" or "Quad Cities", "Carbine", "Mr. Carbine", and "APSC"), pursuant to titles II and III of the Americans with Disabilities Act.   The ADA prohibits privately owned and operated taxi companies from charging persons with disabilities more for transporting them and their equipment than is charged to people without disabilities. The taxi company defendants charge "for wheelchair access there is a $25.00 load

1

fee". The Alabama Public Service Commission approved that discriminatory rate. Ms. Crittenden does not challenge the reasonableness of the rate itself, but rather the wrongful conduct of seeking, charging, and setting discriminatory rates in violation of federal law. Ms. Crittenden seeks injunctive relief only to remedy the improper conduct and not for financial compensatory damages.

## II. JURISDICTION, PARTIES, AND ARTICLE III STANDING

1.    This is action for declaratory relief and injunctive relief, pursuant to both(a) 42 U.S.C. § 12181 *et seq*., Title III of the ADA and implementing regulations, and (b)Title II and implementing regulations, 42 USC 12132 and 28 CFR 35.130.  Accordingly, this Court is vested with original jurisdiction under 28 U.S.C. § 1331 and § 1343.

2.    Venue is proper in this Court, the United States District Court for the Northern District of Alabama, pursuant to Title 28, U.S.C. § 1391 and the Local Rules of the United States District Court for the Northern District of Alabama.

3.    Prior to 2005, Ms. Crittenden was a professional driver, operating a tractor trailer between Alabama and California weekly. In 2005, Ms. Crittenden suffered a brain aneurism and massive stroke. As one series of consequences, she has had over ten (10) eye operations and is legally blind. Moreover, Ms. Crittenden cannot raise her left arm, requires an electric wheelchair for all mobility, and has impairments that cause her fatigue, gait difficulties, spasticity, neuropathy, dexterity,

among other neurological and physical problems that limit her ability to visualize and perform manual tasks, walk, stand, lift, bend, grab, twist, and work, all of which are major life activities pursuant to 42 U.S.C. § 12101(2)(A). Ms. Crittenden requires the use of mobility aids to maneuver; therefore, Ms. Crittenden is disabled pursuant to the ADA, in that she has a physical impairment substantially limiting one or more major life activities. 42 U.S.C. § 12102; *see also*, 28 C.F.R. § 36.104.

4.     Quad Cities Taxi & Limo is located at 122 N Royal Avenue, Florence, Alabama 35630. Carbine Enterprises, Inc., and Bryan Carbine own and operate Quad Cities. Defendants provide transportation services across Florence, Alabama. Therefore, the corporate Defendants are private entities primarily engaged in the business of transporting people and whose operations affect commerce pursuant to 42 U.S.C. § 12184(a); the individual defendant owns and operates those companies. These defendants are sometimes collectively referred to as the taxi defendants.

5.     The Alabama Public Service Commission is the state regulatory agency that approves rates for taxis in Alabama.  As such it is a public entity regulated by Title II, ADA.  It approved the rate as submitted by the taxi defendants. There are no claims that APSC is responsible for the actions of the taxi defendants.

6.     All events giving rise to this lawsuit occurred in the Northern District of Alabama and Defendants are citizens thereof.

3

7.     Ms. Crittenden is a resident of Florence, Alabama. Ms. Crittenden utilizes Defendants' taxi services frequently every week or two to visit the bank, to shop in town, and to complete daily errands throughout the normal course of a week. She uses the taxi service to get to her regular doctor appointments and the drug store. Ms. Crittenden intends to continue utilizing Defendants' taxi service, because Defendants' taxi services allow her to better maneuver around town. Ms. Crittenden will continue using Defendants' taxi services not only for the services provided, but also, to confirm compliance with the ADA by Defendants. Ms. Crittenden definitely intends to continue utilizing Defendants' taxi services. She believes Quad Cities is now and will remain for the foreseeable future one of, if not the best option, for transportation she can independently access. She cannot drive a standard vehicle and cannot afford a specially equipped accessible one, so the taxi service is her primary source of independent transportation without having to have a friend or relative drive her. Because Ms. Crittenden fully intends to continue using Defendants' taxi services for transportation and because Defendants' wrongful actions continue, there exists a genuine threat of imminent future injury.

8.     Ms. Crittenden has been denied the full and equal enjoyment of Defendants' taxi services on the basis of her disabilities, nevertheless.

9.      The APSC will continue to be the state regulatory agency for taxis absent drastic legislative action.  Its actions setting and approving rates for the taxi company defendants will continue to affect Ms. Crittenden in the future.

### III.    PLAINTIFF'S TITLE III CLAIMS

## ADA, TITLE III

10.      Congress enacted Title III of the ADA, 42 U.S.C. § 12181 *et seq*. on or about July 26, 1990. The effective date of Title III of the ADA was January 26, 1992. 42 U.S.C. § 12181; 20 C.F.R. § 36.508(A); *see also*, 20 C.F.R. § 36.304.

11.      Title III of the ADA is customarily considered to relate to public accommodations; however, the scope of Title III is much broader. Title III of the ADA prohibits discrimination on the basis of disability by an array of entities, which includes public accommodations, but also, as here, private entities primarily engaged in providing transportation services. *See* 42 U.S.C. §12182; 42 U.S.C. § 12184. Discrimination prohibited under 42 U.S.C. § 12184 is not contingent upon an entity's status as a public accommodation.

12.      42 U.S.C. § 12184 defines coverage under the statute and applicable regulations to include most types of transportation provided by private companies.

13.      42 U.S.C. § 12184 of Title III of the ADA provides in relevant part:

> No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of specified public transportation services provided by a private entity

5

that is primarily engaged in the business of transporting
people and whose operations affect commerce.

42 U.S.C. § 12184(a).

14.     The term "specified public transportation" is broadly defined as
transportation by any "conveyance (other than by aircraft) that provides the general
public with general or special service (including charter service) on a regular and
continuing basis." 42 U.S.C. § 12181(10).

15.     Additionally, title III of the ADA bars disability discrimination by
privately operated "demand-responsive systems", 42 USC 12182 (c). Title III
defines a demand responsive system as a system providing transportation of
individuals that is not along prescribed routes with fixed schedules. 42 USC
12181(3)-(4).   Taxi services are demand response systems subject to title III's
prohibition on disability discrimination.  49 CFR 37.29 (a) and appendix D; 49 CFR
37.5.

16.     Private entities providing taxi services are specifically prohibited from
"charging higher fares or fees for carrying individuals with disabilities and their
equipment than are charged to other persons."  49 CFR 37.29(c).

17.     Congress recognized, when passing the ADA, the need to promote
societal integration and Congress sought to eradicate discrimination in several
critical areas, including transportation. 42 U.S.C. § 12101 (a)(2), (3). Transportation
is key to societal integration; namely, transportation provides access to jobs, access

6

to health care, business, errands, other appointments, and to places of public accommodation, such as restaurants, movie theaters, and malls. Accessible taxis are a form of transportation, and as a necessary form of transportation, taxi services are covered under the ADA.

**COUNT ONE**
**Quad Cities, Carbine, and Mr. Carbine**
**VIOLATION OF THE ADA, TITLE III**
**42 U.S.C. § 12184 *et seq*.; 49 CFR 37**

**<u>Discrimination in Specified Public Transportation by Private Entity</u>**

18.     Plaintiffs reallege paragraphs 3,4,7, and 10-17.

19.     According to certified APSC documents obtained by subpoena in this action, the taxi company defendants requested to charge "for wheelchair access, there is a $25.00 load fee."  The subpoenaed documents are attached as Exhibit A. The requested charge was approved by the APSC. (Exhibit A)

20.     Also, according to certified APSC documents obtained by subpoena in this action, the taxi company defendants did not seek to charge for any other access than for wheelchairs and did not seek to charge for loading anything other than wheelchairs. Accordingly, people who do not need to use wheelchairs are neither charged for access to the taxi nor for loading *under any circumstances* (except perhaps if they pay for a person who uses a wheelchair and needs access to the taxi or they pay for loading that wheelchair, in which case their association with that person with disabilities subjects them to the same discrimination as the disabled and

7

is also actionable as associational discrimination).[1] 49 CFR 7, especially 49 CFR 7.29 and 7.50, appendix D, make clear that the only way the Defendants may permissibly charge the disabled for access and for loading is to levy a similar charge on those without disabilities, which defendants do not do.

21.    Ms. Crittenden has been repeatedly charged the $25.00 for wheelchair access and loading.

22.    The taxi defendants provide taxi services throughout Florence, Alabama.  The services are not along a set route and do not have a set schedule. Additionally, Defendants are a private entity primarily engaged in the business of transporting individuals and whose operations affect commerce pursuant to 42 U.S.C. § 12184(a).

23.    42 U.S.C. § 12184(a) references "specified public transportation" meaning "transportation by bus, rail or any other conveyance (other than by aircraft) that provides the general public with general or specific service (including charter service) on a regular and continuing basis." 42 U.S.C. § 12181(10).

24.    Defendants provide the general public with general or specific transportation service through conveyance; specifically, taxi service, on a regular and continuing basis.

---

[1] Defendants claim that they actually charge the same discriminatory rate to able-bodied people who happen to have a wheelchair, so that the rate cannot be discriminatory to the disabled.  Ms. Crittenden does not claim the defendants discriminated in the application of the rate to customers, as Defendants imply.  Instead, the rate itself, to whomever it is applied, is discriminatory against a wheelchair-user.

25.     Congress directed the Secretary of Transportation, in addition to the statutory authority of Title III, to issue regulations to implement the Title III transportation provisions; specifically, 42 U.S.C. § 12184. *See* 42 U.S.C. § 12186(a)(1). The Department of Transportation (hereinafter, "DOT") promulgated 49 C.F.R. Part 37 and accompanying guidance that explains the DOT's construction and interpretation of implementing regulations pursuant to Congress' mandate. 49 C.F.R. pt. 37, app. D. *Cf. Auer v. Robbins*, 519 U.S. 452, 461 (1997) (concluding that an agency's interpretation of its regulations is "controlling unless plainly erroneous or inconsistent with the regulation"); *Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 844 (1984) ("Considerable weight should be accorded to an executive department's construction of a statutory scheme it is entrusted to administer.").

26.     The DOT regulation defines the forms of transportation services subject to Title III of the ADA. The regulation and guidance clarify that such services include any transportation services provided by private entities that involve calling for a vehicle and a driver to take one places, including taxi services. *See* 49 C.F.R. § 37.29; 49 pt. 37, app. D § 37.29 ("For purposes of this section, other transportation services that involve calling for a car and a driver to take one places . . . are regarded as taxi services.").

27. The DOT's implementing regulations and guidance further clarify that Defendant is subject to 42 U.S.C. § 12184 because (1) Defendants are primarily engaged in the business of transporting individuals, (2) Defendants' operation affect commerce, and (3) Defendants provide specified transportation services. The DOT regulations are explicit that the transportation services subject to Title III include taxi services (49 C.F.R. § 37.29; 49 C.F.R. pt. 37, app. D § 37.29) and that taxi services are private entities primarily engaged in the business of transporting individuals (*see* 49 C.F.R. § 37.29(a)).

28. In perhaps the simplest and most concise regulation on this subject,  the DOT regulations mandate private entities providing taxi services shall not discriminate against individuals with disabilities by "*charging higher fares or fees for carrying individuals with disabilities and their equipment than are charged to other persons.*" *49 C.F.R. § 37.29(c).*

29. Thus, Defendants violate § 12184 of Title III of the ADA, 42 USC 12182(c ), 49 CFR 37  and other implementing regulations by discriminating against individuals with disabilities.

30. DOT regulations prohibit "special charges" on individuals with disabilities, including individuals with disabilities who utilize wheelchairs, by entities providing transportation services, which includes, but is not limited to, taxi services. 49 C.F.R. § 37.5(d).

31.     The Department of Justice (hereinafter, "DOJ") regulations contained in 28 C.F.R. § 36.301-36.306 prohibit surcharges as well; in particular, surcharges meant to cover the costs of actions required by the ADA to provide individuals with disabilities nondiscriminatory treatment. 28 C.F.R. § 36.301(c). (The DOT also requires compliance. 49 C.F.R. 37.5(f)). Further, "If a taxi company charges $1.00 to stow luggage in the trunk, it cannot charge $2.00 to stow a folding wheelchair there." 49 C.F.R. Subtitle A (10-1-18 Edition) Pt. 37, App. D, Section 37.5.

32.     Defendants charge Ms. Crittenden a higher rate, whether characterized as a higher fee, a special charge, or a surcharge, for transporting her and her equipment, as an individual with a disability who uses a wheelchair.  However, no such additional fee is charged to individuals who do not use wheelchairs. The APSC approved tariff provides specifically "for wheelchair access, there is a $25.00 load fee" (Exhibit A) and does not mention access, luggage or other items for nondisabled individuals.   The ADA does not permit such.

33.     Ms. Crittenden has been obligated to retain the undersigned counsel for the filing and prosecution of this action. Ms. Crittenden is entitled to have her reasonable attorneys' fees, costs, and expenses paid by Defendants pursuant to 42 U.S.C. § 12205.

34.     This Court is authorized to enjoin the above illegal policies, practices, or procedures pursuant to 42 U.S.C. § 12188.

# COUNT TWO
## Quad Cities, Carbine, and Mr. Carbine
## VIOLATION OF THE ADA, TITLE III
## 42 U.S.C. § 12184 *et seq.*
## Policies, Practices, and Procedures

**35.**     Ms. Crittenden realleges paragraphs 3,4,7, and 10-17 above.

**36.**     § 12184(b)(2) of the ADA provides it is discrimination to fail "to make reasonable modifications in policies, practices or procedures when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities. . ." 42 U.S.C. § 12184(b)(2)(A); *see also*, 28 C.F.R. § 36.302(a).

**37.**     Congress enacted the ADA in light of its findings that "individuals with disabilities continually encounter various forms of discrimination, including outright intentional exclusion, the discriminatory effects of architectural, transportation, and communication barriers, overprotective rules and policies, failure to make modifications to existing facilities and practices, exclusionary qualification standards and criteria, segregation, and relegation to lesser services, programs, activities, benefits, jobs, or other opportunities." 42 U.S.C. § 12101(a)(5).

**38.**     The ADA, for that reason, applies not only to barriers to physical access to places of public accommodation, but also to any policy, practice, or procedure that operates to deprive or diminish disabled individuals' full and equal enjoyment of the goods, services, and privileges offered by entity's to the public. Thus, there

must not be a policy, practice, or procedure that excludes individuals with disabilities from services. 42 U.S.C. § 12184 *et seq*.

**Defendants' Failed Practices and Lack of Policies are Discriminatory**

39.    Pursuant to 42 U.S.C. § 12184(b)(2)(A) discrimination includes:

> [A] failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities. . .

> 42 U.S.C. § 12184(b)(2)(A); *see also*, 28 C.F.R. § 36.302(a).

40.    Defendants have failed to make reasonable modifications in the policies, practices, or procedures that are necessary to afford the goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities. Defendants denied services, segregated, or otherwise treated Ms. Crittenden differently than individuals without disabilities by failing to take such efforts that are necessary to ensure that no individual with a disability is excluded. Defendants have discriminated against Ms. Crittenden pursuant to 42 U.S.C. § 12184(b)(2)(A). Defendants will continue the discrimination forever until enjoined as Ms. Crittenden requests.

41.    Defendants either have no policies, practices, or procedures to ensure individuals with disabilities are not subject to discrimination based on their disabilities, or else, Defendants do not abide by the policies, practices, or procedures

to ensure individuals with disabilities are not subject to discrimination based on their disabilities.

42.     Defendants maintain a practice and policy of charging Ms. Crittenden a higher rate, whether characterized as a higher fee, a special charge, or a surcharge, for access to the taxi and for transporting her and her equipment, as an individual with disabilities who uses a wheelchair. However, no such fee is charged to individuals who do not use wheelchairs.

43.     Further, Defendants' current policy, practice, or procedure is to discriminate against Ms. Crittenden by imposing eligibility criteria that deters or tends to deter Ms. Crittenden, and others similarly situated, from fully and equally enjoying the public transportation services provided by Defendants by charging Ms. Crittenden an additional amount of money in addition to the standard rate for an accessible taxi service. 42 U.S.C. § 12184(b)(1). The additional amount discourages Ms. Crittenden, as an individual who requires a wheelchair for mobility and transportation both for herself and her their equipment by deterring both her and similarly situated people from using Defendants' services.

44.     Defendants' existing policy, practice, or procedure is in effect and/or explicitly to modify its discriminatory policies, practices, or procedures only upon demand by individuals with disabilities.

**45.**     Ms. Crittenden provides sufficient notice of her demands for an alteration in Defendants' policies, practices, or procedures.

**46.**     Ms. Crittenden has been obligated to retain the undersigned counsel for the filing and prosecution of this action. Ms. Crittenden is entitled to have her reasonable attorneys' fees, costs, and expenses paid by Defendants pursuant to 42 U.S.C. § 12205.

**47.**     This Court is authorized to enjoin the above illegal policies, practices, or procedures pursuant to 42 U.S.C. § 12188.

**COUNT THREE**
**Quad Cities, Carbine, and Mr. Carbine.**
**VIOLATION OF THE ADA, TITLE III**
**42 U.S.C. § 12203; 28 C.F.R. § 36.206**
**Retaliation**

**48.**     Ms. Crittenden realleges paragraphs 3,4, 7, and 10-17 above.

**49.**     On or around August 16, 2019, Plaintiff's process server encountered Bryan Carbine and generally informed Mr. Carbine of the pending litigation and the impending service of process.

**50.**     On or around August 19, 2019, Ms. Crittenden contacted Quad Cities to request transportation to her doctor appointments August 20 and 22, 2019.

**51.**     Even though they had previously regularly transported her, Quad Cities told Ms. Crittenden they would no longer transport her because she had filed this lawsuit!

52. 42 U.S.C. § 12203 specifically prohibits retaliation against an individual for opposing acts or practices of discrimination under the ADA or because the individual participates in any proceeding pursuant to the ADA. 28 C.F.R. § 36.206 outlaws the same and additional conduct and even identifies as retaliation interfering, threatening, or intimidating an individual with a disability who seeks the services of a public accommodation and coercing an individual to deny or limit benefits under the ADA Title III. 28 C.F.R. § 36.206(a), (c)(1)(2)(4).

53. The taxi defendants, in a verbal discussion between its counsel and plaintiff's counsel, asserted that the taxi defendants have abandoned their retaliatory actions. However, that alleged change only occurred after Ms. Crittenden's complaint was filed claiming retaliation. Absent an injunction the defendant is free to return to its practice of retaliation and abandon its alleged voluntary cessation of retaliation. The defendants have not established that the retaliation was isolated or unintended, or that the temporary cessation was motivated by a genuine change of attitude or policy.

54. This Court is authorized to enjoin the Defendants' from discriminating against the Plaintiff by retaliating against her for exercising her lawful rights under the ADA, pursuant to 42 U.S.C. § 12188.

Case 3:19-cv-01242-HNJ   Document 36-1   Filed 10/07/19   Page 17 of 25

## COUNT FOUR
## Alabama Public Service Commission
## VIOLATION OF THE ADA, Title II
## Discriminatory Tariffs for Taxi Services

**55.**     Ms. Crittenden realleges paragraphs 3,5,7,9-17 above.

**56.**     As previously provided above, taxi services cannot discriminate against individuals with disabilities and cannot charge "higher fares or fees for carrying individuals with disabilities and their equipment than are charged to other persons." 49 C.F.R. § 37.29(c).

**57.**     Defendant taxi companies claim that the higher rates for wheelchair loading complies with the tariffs filed with and approved by the APSC and is thus unassailable.

**58.**     The APSC is subject to Title II of the ADA as a public entity, and as a public entity, is prohibited from engaging in disability discrimination. 42 U.S.C. § 12132; 28 C.F.R. § 35.130(a).

**59.**     *Ms. Crittenden does not challenge the reasonableness of the rates established by the APSC.  Rather, she challenges the wrongful conduct of setting discriminatory rates in violation of federal law.*  Because of the Supremacy Clause of the US Constitution, a preclusion of federal claims based on state action must be justified by language, remedies, and purposes of     *federal* statutes.  As pled throughout this complaint, Ms. Crittenden seeks to prohibit the defendants from

charging her a higher rate for access to transportation and loading of her equipment

into the taxi than people without disabilities.

**60.** Title II prohibits unlawful discrimination including administration of a

licensing program that subjects individuals with disabilities to discrimination and

establishes licensure requirements that subject individuals with disabilities to

discrimination. 28 C.F.R. § 35.130(b)(6). The DOJ provides as an example:

> A State prohibits the licensing of transportation companies
> that employ individuals with missing limbs as drivers.
> XYZ company refuses to hire an individual with a missing
> limb who is "qualified" to perform the essential functions
> of the job, because he is able to drive safely with hand
> controls. The State's licensing requirements violate title II.
>
> BUT: The State is not accountable for discrimination in
> the employment or other practices of XYZ company, if
> those practices are not the result of requirements or
> policies established by the State.

DOJ, *ADA Title II Technical Assistance Manual* § II-3.7200 (1994).

**61.** Just as the example above provides a licensing agency cannot impose

discriminatory safety requirements on licensees' employees, a licensing agency also

cannot authorize licensees to impose discriminatory surcharges on services offered

to licensees' customers with disabilities. Therefore, APSC violates Title II of the

ADA by requiring or approving rates that are higher for individuals with disabilities

than those rates for individuals without disabilities.

62.     The actions of the defendant ASPC violate both 42 USC 12132 and 28 CFR 35.130(a), because the rate established by the APSC for access to taxis and loading equipment, is discriminatory, as described above.

63.     The actions of the defendant violate 28 CFR 35.130 (b)(1) (ii), because under the rate established by the APSC, the opportunity to participate in the taxi service is not equal for those  who use a wheelchair, because they are required to pay a higher fee than anyone else for access and loading.

64.     The actions of the defendant violate 28 CFR 35.130 (b)(1)(vii), because the discriminatory rate limits Ms. Crittenden in her access to the same services enjoyed by other customers who do not use wheelchairs for mobility.

65.     Finally, the actions of the defendant violate 28 CFR 35.130 (f), by permitting and placing a surcharge directly on individuals who use wheelchairs for mobility.  The approval and imposition of such a surcharge is prohibited by the ADA as a discriminatory activity, whether it is carried out by a public entity such as the APSC or private entities such as the taxi companies.

66.     Ms. Crittenden has been obligated to retain the undersigned counsel for the filing and prosecution of this action. Ms. Crittenden is entitled to have her reasonable attorneys' fees, costs, and expenses paid by Defendants pursuant to 42 U.S.C. § 12205.

67.    This Court is authorized to enjoin the above illegal policies, practices, or procedures pursuant to 42 U.S.C. § 12188.

**WHEREFORE**, premises considered, Eva Blair Crittenden demands judgment against Defendants on Counts One through Four of this Complaint and requests the following injunctive relief and declaratory relief:

1.  That this Court declare that Defendants' illegal actions described herein violate the ADA, as more particularly described above;

2.  That this Court enter an Order enjoining all Defendants both now and in the future from charging and permitting higher fares for carrying individuals with disabilities and their equipment than are charged to other persons;

3.  That this Court enter an Order, in accordance with Count Two of this Complaint, requiring the taxi companies associated Defendants to modify the policies, practices, or procedures both to remedy  Defendants' illegal actions described herein, as more particularly described above, and to permanently enjoin Defendants to make Defendants' business policies, practices, or procedures compliant with the ADA, Title III in the future;

4.  That this Court enter an Order, pursuant to Count Three of this Complaint enjoining Defendants from retaliating against Ms. Crittenden in any way forever, including their refusal to transport her because of this case;

20

5. That this Court enter an Order, pursuant to Count Four of this Complaint enjoining Defendant from adopting rates or regulations that impose higher rates on individuals with disabilities than those imposed on individuals without disabilities for carrying individuals with disabilities and their equipment;

6. That this Court award reasonable attorneys' fees, costs, including expert fees and expenses, and other expenses of suit, to Ms. Crittenden; and

7. That this Court award such other, further, and different relief as this Court deems necessary, just, and proper.

Respectfully Submitted, this the 29th Day of October 2019.

> /s/ L. Landis Sexton
> L. Landis Sexton (AL Bar # 5057-N71L)
> ADA Group LLC
> 4001 Carmichael Road, Suite 570
> Montgomery, Alabama 36106
> Telephone: 334-819-4030
> Facsimile: 334-521-3859
> Email: LLS@ADA-Firm.com
> *Counsel for Ms. Crittenden*

> /s/ Cassie E. Taylor
> Cassie E. Taylor (AL Bar # 8297-N67R)
> ADA Group LLC
> 4001 Carmichael Road, Suite 570
> Montgomery, Alabama 36106
> Telephone: 334-356-5314
> Facsimile: 334-521-3859
> Email: CET@ADA-Firm.com
> *Counsel for Ms. Crittenden*

/s/ Pshon Barrett
Pshon Barrett (admitted *pro hac vice*)
ADA Group LLC
4001 Carmichael Road, Suite 570
Montgomery, Alabama 36106
334.819.4030 p
334.819.4032 f
Pshon.Barrett@ADA-Firm.com
*Counsel for Ms. Crittenden*

## CERTIFICATE OF SERVICE

This is to certify that I have this day filed with the Clerk of Court the aforementioned Complaint for service of process by USPS mail or electronic mail, postage prepaid and properly addressed this 29th Day of October 2019 to the following:

James Irby
James Irby P.C.
120 East Tennessee Street
Florence, Alabama 35630
Telephone: 256-766-7778
Facsimile: 256-776-7845
Email: james@jamesirby.com

Alabama Public Service Commission
Attn.: Legal Division
100 N Union St., RSA Union
Montgomery, AL 36104

/s/ L. Landis Sexton
L. Landis Sexton
*Counsel for Ms. Crittenden*

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### NORTHWESTERN DIVISION

| | | |
|---|---|---|
| **EVA BLAIR CRITTENDEN,** | ) | |
| **Plaintiff,** | ) | |
| | ) | **CIVIL ACTION NO.** |
| **v.** | ) | **3:19-cv-1242-HNJ** |
| | ) | |
| **QUAD CITIES TAXI & LIMO,** | ) | |
| *et al.*, | ) | |
| **Defendants.** | ) | |

## PLAINTIFF'S EXHIBIT "A"

*Subpoenaed Documents from the Alabama Public Service Commission ("APSC"*

EXHIBIT
A

APSC NO. ___200_____

CERTIFICATE NO. _3941_____

## Carbine Enterprises, Inc. dba Quad Cities Taxi
(COMPANY NAME)

LOCAL PASSENGER TARIFF NO. ___2____

CANCELS TARIFF NO. ___1___

Publishing Fares

For The
Transportation of Passengers

(1)   Between all points and places in Colbert and Lauderdale Counties; and

(2)   From all points in (1) above to all points in Alabama and return.

For the first mile of fraction thereof: $__7.00_____

   For each additional mile or fraction thereof: $___1.50_____

For wheelchair access there is a $25.00 load fee

Except as follows:

WAITING TIME

Passengers delaying Taxicabs at their request will be charged at the rate of $__45.00___ per hour or $_4.00__ for each TEN MINUTES or fraction thereof.  A FIVE MINUTE delay will be permitted passengers without charge.

APPLICABLE ONLY ON ALABAMA INTRASTATE TRAFFIC.

Issued Date _09/21/16_____   Effective Date _10/21/16_____
                                                        (30 days from issued date)

Issued by _Bryan Carbine_____
         (person preparing tariff)

Address _1212 Vine St_____   Telephone No. (256_) 767-0220_____

      Florence, AL 35630_____



APSC NO. _____100_____

CERTIFICATE NO. __3941__

## QUAD CITIES TAXI & LIMOUSINE SERVICE

LOCAL PASSENGER TARIFF NO. ___1____

CANCELS TARIFF NO. __NEW___

**Publishing Fares**

For The
Transportation of Passengers

(1)   Between all points and places in Colbert and Lauderdale
      Counties; and

(2)   From all points in (1) above to all points in Alabama
      and return.

RESTRICTIONS:   Restricted against the transportation of non-
                emergency medical patients.

For the first mile of fraction thereof:  $_____7.00_____

For each additional mile or fraction thereof:  $___1.50_____

Except as follows:

WAITING TIME

Passengers delaying Taxicabs at their request will be charged at the
rate of $ _24⁰⁰___ per hour or $ __4⁰⁰___ for each TEN MINUTES or
fraction thereof.  A FIVE MINUTE delay will be permitted passengers
without charge.

APPLICABLE ONLY ON ALABAMA INTRASTATE TRAFFIC.

Issued Date _2-26-09_____    Effective Date _3-26-09_____

Issued by _____
          (person preparing tariff)

Address _Jenny J Carbins_____

        _1212 VINE ST._____    Telephone No. _(256) 767-0220___

        _FLORENCE ALA_____              FAX   256-383-1818
                  35630                     CELL  256 810-4433