FILED

2020 Jun-22 PM 04:52
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### NORTHWESTERN DIVISION

| | | |
|---|---|---|
| **EVA BLAIR CRITTENDEN,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Case 3:19-cv-01242-LCB** |
| | ) | |
| **QUAD CITIES TAXI & LIMO,** | ) | |
| **CARBINE ENTERPRISES, INC.,** | ) | |
| **BRYAN CARBINE, and** | ) | |
| **ALABAMA PUBLIC SERVICE** | ) | |
| **COMMISSION,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## THIRD AMENDED COMPLAINT

## I.     INTRODUCTION

Plaintiff, Eva Blair Crittenden ("Plaintiff" or "Mrs. Crittenden"), files this Title III, Americans with Disabilities Act ("ADA") action against Defendants, Quad Cities Taxi & Limo, Carbine Enterprises, Inc., Bryan Carbine, and Alabama Public Service Commission (collectively, "Defendants" or "Quad Cities", "Carbine", "Mr. Carbine" and "APSC"), pursuant to Titles II and III of the ADA. The ADA prohibits privately owned and operated taxi companies from charging more for transporting individuals with disabilities and their equipment than is charged to individuals without disabilities. At the time of Plaintiff's second amended complaint on November 07, 2019 (Doc. 36), the taxi company defendants were charging "for

wheelchair access" a "$25.00 load fee". The taxi company defendants have since requested a new tariff which became effective on February 28, 2020 that now charges "[f]or vehicles equipped with a wheelchair lift" an "$18.00 charge to deploy the ramp." The APSC approved the previous discriminatory tariff and the newest discriminatory tariff. Mrs. Crittenden does not challenge the reasonableness of the rate itself, but rather, the wrongful conduct of seeking, charging, and setting discriminatory rates in violation of federal law. Mrs. Crittenden seeks injunctive relief only to remedy the improper conduct and not for financial compensatory damages.

## II.     JURISDICTION, PARTIES, AND ARTICLE III STANDING

1.     This action is for declaratory relief and injunctive relief, pursuant to both (a) 42 U.S.C. §12181 *et seq*., Title III of the ADA and implementing regulations, and (b) 42 U.S.C. §12132 and 28 C.F.R. §35.130, Title II of the ADA and implementing regulations. Accordingly, this Court is vested with original jurisdiction under 28 U.S.C. §1331 and §1343.

2.     Venue is proper in this Court, the United States District Court for the Northern District of Alabama, pursuant to Title 28, U.S.C. §1391 and the Local Rules of the United States District Court for the Northern District of Alabama.

3.     Mrs. Crittenden was a professional driver prior to 2005, and she operated a tractor trailer between Alabama and California weekly. Mrs. Crittenden

2

suffered a brain aneurism and a massive stroke in 2005. As one series of consequences, Mrs. Crittenden has had over ten (10) eye operations and is legally blind. Moreover, Mrs. Crittenden cannot raise her left arm, she requires an electric wheelchair for all mobility, and she has impairments that cause her fatigue, gait difficulties, spasticity, neuropathy, and dexterity issues, among other neurological and physical problems that limit her ability to visualize and perform manual tasks, walk, stand, lift, bend, grab, twist, and work, all of which are major life activities, pursuant to 42 U.S.C. §12101(2)(A). Mrs. Crittenden requires the use of mobility aids to maneuver; therefore, Mrs. Crittenden is disabled pursuant to the ADA, in that she has a physical impairment substantially limiting one or more major life activities. 42 U.S.C. §12102; *see also*, 28 C.F.R. §36.104.

4.     Quad Cities Taxi & Limo is located at 122 N Royal Avenue, Florence, Alabama 35630. Carbine Enterprises, Inc. and Bryan Carbine own and operate Quad Cities. Defendants provide transportation services across Florence, Alabama. Therefore, the corporate Defendants are private entities primarily engaged in the business of transporting people and whose operations affect commerce pursuant to 42 U.S.C. §12184(a); the individual Defendant owns and operates those companies. These Defendants are sometimes collectively referred to as "taxi company defendants".

5.     The APSC is the state regulatory agency that approves rates for taxi companies in Alabama. As such, APSC is a public entity regulated by Title II of the ADA. The APSC approved the rate as submitted by the taxi company defendants. There are no claims that the APSC is responsible for the actions of the taxi company defendants.

6.     All events giving rise to this lawsuit occurred in the Northern District of Alabama and Defendants are citizens thereof.

7.     Mrs. Crittenden is a resident of Florence, Alabama. Mrs. Crittenden utilizes Defendants' taxi services frequently, every week or two, to visit the bank, to shop in town, and to complete daily errands throughout the normal course of a week. She also uses Defendants' taxi services to get to her regular doctor appointments and the drug store. Mrs. Crittenden intends to continue utilizing Defendants' taxi services, because Defendants' taxi services allow her to better maneuver around town. Mrs. Crittenden will continue using Defendants' taxi services not only for the services provided, but also, to confirm compliance with the ADA by Defendants. Mrs. Crittenden definitely intends to continue utilizing Defendants' taxi services. She believes Quad Cities is now and will remain for the foreseeable future one of, if not the best option, for transportation she can independently access. She cannot drive a standard vehicle and cannot afford a specially equipped accessible vehicle, so the taxi service is her primary source of independent transportation without having to

have a friend or relative drive her. Because Mrs. Crittenden fully intends to continue using Defendants' taxi services for transportation and because Defendants' wrongful actions continue, there exists a genuine threat of imminent future injury.

8.    Mrs. Crittenden has been denied the full and equal enjoyment of Defendants' taxi services on the basis of her disabilities.

9.    The APSC will continue to be the state regulatory agency for taxi companies absent drastic legislative action. The APSC's actions setting and approving rates for the taxi company defendants will continue to affect Mrs. Crittenden in the future.

### III.    PLAINTIFF'S TITLE III CLAIMS

**ADA, TITLE III**

10.    Congress enacted Title III of the ADA, 42 U.S.C. §12181 *et seq*. on or about July 26, 1990. The effective date of Title III of the ADA was January 26, 1992. 42 U.S.C. §12181; 20 C.F.R. §36.508(A); *see also*, 20 C.F.R. §36.304.

11.    Title III of the ADA is customarily considered to relate to public accommodations; however, the scope of Title III is much broader. Title III of the ADA prohibits discrimination on the basis of disability by an array of entities, which includes public accommodations, but also, as here, private entities primarily engaged in providing transportation services. *See*, 42 U.S.C. §12182; 42 U.S.C. §12184.

Discrimination prohibited under 42 U.S.C. §12184 is not contingent upon an entity's status as a public accommodation.

12.    42 U.S.C. §12184 defines coverage under the statute and applicable regulations to include most types of transportation provided by private companies.

13.    42 U.S.C. §12184 of Title III of the ADA provides in relevant part:

> No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of specified public transportation services provided by a private entity that is primarily engaged in the business of transporting people and whose operations affect commerce.

42 U.S.C. §12184(a).

14.    The term "specified public transportation" is broadly defined as transportation by any "conveyance (other than by aircraft) that provides the general public with general or special service (including charter service) on a regular and continuing basis." 42 U.S.C. §12181(10).

15.    Additionally, Title III of the ADA bars disability discrimination by privately operated "demand-responsive systems", 42 U.S.C. §12182(c). Title III defines a demand responsive system as a system providing transportation of individuals that is not along prescribed routes with fixed schedules. 42 U.S.C. §12181(3)-(4). Taxi services are demand response systems subject to Title III's prohibition of disability discrimination. 49 C.F.R. §37.29(a) and appendix D; 49 C.F.R. §37.5.

16.     The U.S. Department of Transportation regulations implementing the transportation provisions of Title III of the ADA specifically prohibit Private entities providing taxi services from "charging higher fares or fees for carrying individuals with disabilities and their equipment than are charged to other persons." 49 C.F.R. §37.29(c).

17.     Congress recognized, when passing the ADA, the need to promote societal integration, and Congress sought to eradicate discrimination in several critical areas, including transportation. 42 U.S.C. §12101(a)(2), (3). Transportation is key to societal integration; namely, transportation provides access to jobs, access to health care, business, errands, other appointments, and to places of public accommodation, such as restaurants, movie theaters, and malls. Accessible taxis are a form of transportation, and as a necessary form of transportation, taxi services are covered under the ADA.

### COUNT ONE
### QUAD CITIES, CARBINE, AND MR. CARBINE
### VIOLATION OF THE ADA, TITLE III
### 42 U.S.C. §12184 *et seq.*; 49 C.F.R. Part 37

### Discrimination in Specified Public Transportation by Private Entity

18.     Plaintiff realleges paragraphs 3, 4, 7, and 10-17 above.

19.     According to certified APSC documents obtained by subpoena in this action at the time of Plaintiff's second amended complaint on November 07, 2019,

the taxi company defendants were charging "for wheelchair access, there is a $25.00 load fee." The requested charge was approved by the APSC. (Exhibit A)

20.     The taxi company defendants have since requested a new tariff which became effective on February 28, 2020 that now charges "[f]or vehicles equipped with a wheelchair lift, there will be an $18.00 charge to deploy the ramp." (Exhibit B). The requested charge was approved by the APSC.

21.     The only difference between the two tariffs is a $7.00 difference from $25.00 to $18.00 for individuals with wheelchairs who need to deploy the ramp for vehicles with a wheelchair lift.  Defendants' weak attempt to suggest the additional charge is "to deploy the ramp" for vehicles equipped with a wheelchair lift suggests that  Defendant would likely argue the wheelchair lift  could somehow be deployed for more than just a wheelchair. However, the discriminatory effect is that  people who do not need to use wheelchairs are not charged additional money for access to these taxis.  The discriminatory effect is that the  individuals deploying a wheelchair ramp on vehicles equipped with a wheelchair lift are individuals with disabilities who need to travel in their wheelchairs.

22.     Under both tariffs, Mrs. Crittenden has been and will be repeatedly charged more for wheelchair access and loading.

23.     The taxi company defendants provide taxi services throughout Florence, Alabama. The services are not along a set route and do not have a set

schedule. Additionally, the taxi company defendants are a private entity primarily engaged in the business of transporting individuals and whose operations affect commerce pursuant to 42 U.S.C. §12184(a).

24.    42 U.S.C. §12184(a) references "specified public transportation" meaning "transportation by bus, rail or any other conveyance (other than by aircraft) that provides the general public with general or specific service (including charter service) on a regular and continuing basis." 42 U.S.C. § 12181(10).

25.    The taxi company defendants provide the general public with general or specific transportation service through conveyance; specifically, taxi service, on a regular and continuing basis.

26.    Congress directed the Secretary of Transportation, in addition to the statutory authority of Title III, to issue regulations to implement the Title III transportation provisions; specifically, 42 U.S.C. §12184. *See*, 42 U.S.C. §12186(a)(1). The Department of Transportation ("DOT") promulgated 49 C.F.R. Part 37 and accompanying guidance that explains the DOT's construction and interpretation of implementing regulations pursuant to Congress' mandate. 49 C.F.R. pt. 37, app. D. *Cf. Auer v. Robbins*, 519 U.S. 452, 461 (1997) (concluding that an agency's interpretation of its regulations is "controlling unless plainly erroneous or inconsistent with the regulation"); *Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 844 (1984) ("Considerable weight should be

accorded to an executive department's construction of a statutory scheme it is entrusted to administer.").

27.     The DOT regulation defines the forms of transportation services subject to Title III of the ADA. The regulation and guidance clarify that such services include any transportation services provided by private entities that involve calling for a vehicle and a driver to take one places, including taxi services. *See*, 49 C.F.R. § 37.29; 49 pt. 37, app. D § 37.29 ("For purposes of this section, other transportation services that involve calling for a car and a driver to take one places . . . are regarded as taxi services.").

28.     The DOT's implementing regulations and guidance further clarify that Defendant is subject to 42 U.S.C. §12184 because (1) Defendants are primarily engaged in the business of transporting individuals, (2) Defendants' operation affect commerce, and (3) Defendants provide specified transportation services. The DOT regulations are explicit that the transportation services subject to Title III include taxi services (49 C.F.R. § 37.29; 49 C.F.R. pt. 37, app. D § 37.29) and that taxi services are private entities primarily engaged in the business of transporting individuals (*see* 49 C.F.R. § 37.29(a)).

29.     In perhaps the simplest and most concise regulation on this subject, the DOT regulations mandate private entities providing taxi services shall not discriminate against individuals with disabilities by "charging higher fares or fees

for carrying individuals with disabilities and their equipment than are charged to other persons." 49 C.F.R. § 37.29(c).

30.    Thus, Defendants violate §12184 of Title III of the ADA, 42 U.S.C. 12182(c), 49 C.F.R. Part 37 and other implementing regulations by discriminating against individuals with disabilities.

31.    DOT regulations prohibit "special charges" on individuals with disabilities, including individuals with disabilities who utilize wheelchairs, by entities providing transportation services, which includes, but is not limited to, taxi services. 49 C.F.R. § 37.5(d).

32.    The Department of Justice ("DOJ") regulations contained in 28 C.F.R. §36.301-36.306 prohibit surcharges as well; in particular, surcharges meant to cover the costs of actions required by the ADA to provide individuals with disabilities nondiscriminatory treatment. 28 C.F.R. §36.301(c). (The DOT also requires compliance. 49 C.F.R. 37.5(f)). Further, "If a taxi company charges $1.00 to stow luggage in the trunk, it cannot charge $2.00 to stow a folding wheelchair there." 49 C.F.R. Subtitle A (10-1-18 Edition) Pt. 37, App. D, Section 37.5.

33.    Defendants charge Mrs. Crittenden a higher rate, whether characterized as a higher fee, a special charge, or a surcharge, for transporting her and her equipment, as an individual with a disability who uses a wheelchair. However, no such additional fee is charged to individuals who do not use wheelchairs. The APSC

approved tariff provides specifically "[f]or vehicles equipped with a wheelchair lift, there will be an $18.00 charge to deploy the ramp" (Exhibit B) and does not mention access, luggage, or other items for individuals without disabilities. The ADA does not permit such.

34.     Mrs. Crittenden has been obligated to retain the undersigned counsel for the filing and prosecution of this action. Mrs. Crittenden is entitled to have her reasonable attorneys' fees, costs, and expenses paid by Defendants pursuant to 42 U.S.C. §12205.

35.     This Court is authorized to enjoin the above illegal policies, practices, or procedures pursuant to 42 U.S.C. §12188.

**COUNT TWO**
**QUAD CITIES, CARBINE, AND MR. CARBINE**
**VIOLATION OF THE ADA, TITLE III**
**42 U.S.C. §12184 *et seq.***
**Policies, Practices, and Procedures**

36.     Plaintiff realleges paragraphs 3, 4, 7, and 10-17 above.

37.     §12184(b)(2) of the ADA provides it is discrimination to fail "to make reasonable modifications in policies, practices or procedures when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities. . ." 42 U.S.C. §12184(b)(2)(A); *see also*, 28 C.F.R. §36.302(a).

38.     Congress enacted the ADA in light of its findings that "individuals with disabilities continually encounter various forms of discrimination, including outright intentional exclusion, the discriminatory effects of architectural, transportation, and communication barriers, overprotective rules and policies, failure to make modifications to existing facilities and practices, exclusionary qualification standards and criteria, segregation, and relegation to lesser services, programs, activities, benefits, jobs, or other opportunities." 42 U.S.C. §12101(a)(5).

39.     The ADA, for that reason, applies not only to barriers to physical access to places of public accommodation, but also to any policy, practice, or procedure that operates to deprive or diminish disabled individuals' full and equal enjoyment of the goods, services, and privileges offered by entities to the public. Thus, there must not be a policy, practice, or procedure that excludes individuals with disabilities from services. 42 U.S.C. §12184 *et seq.*

**Defendants' Failed Practices and Lack of Policies are Discriminatory**

40.     Pursuant to 42 U.S.C. §12184(b)(2)(A), discrimination includes:

> [A] failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities. . .

> U.S.C. §12184(b)(2)(A); *see also*, 28 C.F.R. §36.302(a).

41.    Defendants have failed to make reasonable modifications in the policies, practices, or procedures that are necessary to afford the goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities. Defendants denied services, segregated, or otherwise treated Mrs. Crittenden differently than individuals without disabilities by failing to take such efforts that are necessary to ensure that no individual with a disability is excluded. Defendants have discriminated against Mrs. Crittenden pursuant to 42 U.S.C. §12184(b)(2)(A). Defendants will continue the discrimination forever until enjoined as Mrs. Crittenden requests.

42.    Defendants either have no policies, practices, or procedures to ensure individuals with disabilities are not subject to discrimination based on their disabilities, or else, Defendants do not abide by the policies, practices, or procedures to ensure individuals with disabilities are not subject to discrimination based on their disabilities.

43.    Defendants maintain a practice and policy of charging Mrs. Crittenden a higher rate, whether characterized as a higher fee, a special charge, or a surcharge, for access to the taxi and for transporting her and her equipment, as an individual with disabilities who uses a wheelchair. However, no such fee is charged to individuals who do not use wheelchairs.

44.     Further, Defendants' current policy, practice, or procedure is to discriminate against Mrs. Crittenden by imposing eligibility criteria that deters or tends to deter Mrs. Crittenden, and others similarly situated, from fully and equally enjoying the public transportation services provided by Defendants by charging Mrs. Crittenden an additional amount of money in addition to the standard rate for an accessible taxi service. 42 U.S.C. §12184(b)(1). The additional amount discourages Mrs. Crittenden, as an individual who requires a wheelchair for mobility and transportation both for herself and her their equipment by deterring both her and similarly situated people from using Defendants' services.

45.     Defendants' existing policy, practice, or procedure is in effect and/or explicitly to modify its discriminatory policies, practices, or procedures only upon demand by individuals with disabilities.

46.     Mrs. Crittenden provides sufficient notice of her demands for an alteration in Defendants' policies, practices, or procedures.

47.     Mrs. Crittenden has been obligated to retain the undersigned counsel for the filing and prosecution of this action. Mrs. Crittenden is entitled to have her reasonable attorneys' fees, costs, and expenses paid by Defendants pursuant to 42 U.S.C. §12205.

48.     This Court is authorized to enjoin the above illegal policies, practices, or procedures pursuant to 42 U.S.C. §12188.

## COUNT THREE
## QUAD CITIES, CARBINE, AND MR. CARBINE
## VIOLATION OF THE ADA, TITLE III
## 42 U.S.C. §12203; 28 C.F.R. §36.206
## Retaliation

**49.**     Plaintiff realleges paragraphs 3, 4, 7, and 10-17 above.

**50.**     On or around August 16, 2019, Plaintiff's process server encountered Bryan Carbine and generally informed Mr. Carbine of the pending litigation and the impending service of process.

**51.**     On or around August 19, 2019, Mrs. Crittenden contacted Quad Cities to request transportation to her doctor appointments August 20 and 22, 2019.

**52.**     Although Defendant had previously regularly transported Mrs. Crittenden, Quad Cities told Mrs. Crittenden they would no longer transport her because she had filed this lawsuit!

**53.**     42 U.S.C. §12203 specifically prohibits retaliation against an individual for opposing acts or practices of discrimination under the ADA or because the individual participates in any proceeding pursuant to the ADA. 28 C.F.R. §36.206 outlaws the same and additional conduct and even identifies as retaliation interfering, threatening, or intimidating an individual with a disability who seeks the services of a public accommodation and coercing an individual to deny or limit benefits under the ADA Title III. 28 C.F.R. §36.206(a), (c)(1)(2)(4).

54.    The taxi company defendants, in a verbal discussion between its counsel and plaintiff's counsel, asserted that the taxi company defendants have abandoned their retaliatory actions. However, that alleged change only occurred after Mrs. Crittenden's complaint was filed claiming retaliation. Absent an injunction the taxi company defendants are free to return to practices of retaliation and abandon alleged voluntary cessation of retaliation. The taxi company defendants have not established that the retaliation was isolated or unintended, or that the temporary cessation was motivated by a genuine change of attitude or policy.

55.    This Court is authorized to enjoin the Defendants' from discriminating against the Plaintiff by retaliating against her for exercising her lawful rights under the ADA, pursuant to 42 U.S.C. §12188.

**COUNT FOUR**
**ALABAMA PUBLIC SERVICE COMMISSION**
**VIOLATION OF THE ADA, TITLE II**
**Discriminatory Tariffs for Taxi Services**

56.    Plaintiff realleges paragraphs 3, 5, 7, 9-17 above.

57.    As previously provided above, taxi companies cannot discriminate against individuals with disabilities and cannot charge "higher fares or fees for transporting individuals with disabilities and their equipment than are charged to other persons." 49 C.F.R. §37.29(c).

**58.** Defendant taxi company claims that the higher rates for wheelchair loading complies with the tariffs filed with and approved by the APSC and is thus unassailable.

**59.** The APSC is subject to Title II of the ADA as a public entity, and as a public entity, is prohibited from engaging in disability discrimination. 42 U.S.C. §12132; 28 C.F.R. §35.130(a).

**60.** Mrs. Crittenden does not challenge the reasonableness of the rates established by the APSC. Rather, she challenges the wrongful conduct of setting discriminatory rates in violation of federal law. Because of the Supremacy Clause of the U.S. Constitution, a preclusion of federal claims based on state action must be justified by language, remedies, and purposes of federal statutes. As pled throughout this complaint, Mrs. Crittenden seeks to prohibit Defendants from charging her a higher rate for access to transportation and loading of her equipment into the taxi than individuals without disabilities.

**61.** Title II prohibits unlawful discrimination including administration of a licensing program that subjects individuals with disabilities to discrimination and establishes licensure requirements that subject individuals with disabilities to discrimination. 28 C.F.R. §35.130(b)(6). The DOJ provides as an example:

> A State prohibits the licensing of transportation companies
> that employ individuals with missing limbs as drivers.
> XYZ company refuses to hire an individual with a missing

limb who is "qualified" to perform the essential functions of the job, because he is able to drive safely with hand controls. The State's licensing requirements violate title II.

BUT: The State is not accountable for discrimination in the employment or other practices of XYZ company, if those practices are not the result of requirements or policies established by the State.

DOJ, *ADA Title II Technical Assistance Manual § II-3.7200 (1994).*

62.    Just as the example above provides a licensing agency cannot impose discriminatory safety requirements on licensees' employees, a licensing agency also cannot authorize licensees to impose discriminatory surcharges on services offered to licensees' customers with disabilities. Therefore, APSC violates Title II of the ADA by requiring or approving rates that are higher for individuals with disabilities than those rates for individuals without disabilities.

63.    The actions of the ASPC violate both 42 U.S.C. §12132 and 28 C.F.R. §35.130(a), because the rate established by the APSC for access to taxis and loading equipment, is discriminatory, as described above.

64.    The actions of Defendant violate 28 C.F.R. §35.130(b)(1)(ii), because under the rate established by the APSC, the opportunity to participate in the taxi service is not equal for those who use a wheelchair, because wheelchair users are required to pay a higher fee than individuals who do not require the use of a wheelchair lift to board the vehicle.

65.     The actions of Defendant violate 28 C.F.R. §35.130(b)(1)(vii), because the discriminatory rate limits Mrs. Crittenden in her access to the same services enjoyed by customers who do not use wheelchairs for mobility.

66.     Finally, the actions of Defendant violate 28 C.F.R. §35.130(f), by permitting and placing a surcharge directly on individuals who use wheelchairs for mobility. The approval and imposition of such a surcharge is prohibited by the ADA as a discriminatory activity, whether it is carried out by a public entity such as the APSC or by private entities such as taxi companies.

67.     Mrs. Crittenden has been obligated to retain the undersigned counsel for the filing and prosecution of this action. Mrs. Crittenden is entitled to have her reasonable attorneys' fees, costs, and expenses paid by Defendants pursuant to 42 U.S.C. §12205.

68.     This Court is authorized to enjoin the above illegal policies, practices, or procedures pursuant to 42 U.S.C. §12188.

**WHEREFORE**, premises considered, Eva Blair Crittenden demands judgment against Defendants on Counts One through Four of this Complaint and requests the following injunctive relief and declaratory relief:

1. That this Court declare that Defendants' illegal actions described herein violate the ADA, as more particularly described above;

2. That this Court enter an Order enjoining all Defendants both now and in the future from charging and permitting higher fares for carrying individuals with disabilities and their equipment than are charged to individuals without disabilities;

3. That this Court enter an Order, in accordance with Count Two of this Complaint, requiring the taxi companies associated Defendants to modify the policies, practices, or procedures both to remedy Defendants' illegal actions described herein, as more particularly described above, and to permanently enjoin Defendants to make Defendants' business policies, practices, or procedures compliant with the ADA, Title III in the future;

4. That this Court enter an Order, pursuant to Count Three of this Complaint enjoining Defendants from retaliating against Mrs. Crittenden in any way forever, including their refusal to transport her because of this case;

5. That this Court enter an Order, pursuant to Count Four of this Complaint enjoining Defendant from adopting rates or regulations that impose higher rates on individuals with disabilities than those imposed on individuals without disabilities for carrying individuals with disabilities and their equipment;

6. That this Court award reasonable attorneys' fees, costs, including expert fees and expenses, and other expenses of suit, to Mrs. Crittenden; and

7. That this Court award such other, further, and different relief as this Court

deems necessary, just, and proper.

Respectfully Submitted, this the 12th day of June 2020.

/s/ L. Landis Sexton
L. Landis Sexton
AL Bar # 5057-N71L
ADA Group LLC
4001 Carmichael Road, Suite 570
Montgomery, Alabama 36106
Telephone: 334-819-4030
Email: LLS@ADA-Firm.com
Counsel for Mrs. Crittenden

/s/ Cassie E. Taylor
Cassie E. Taylor
AL Bar # 8297-N67R
ADA Group LLC
4001 Carmichael Road
Suite 570
Montgomery, Alabama 36106
Telephone: 334-356-5314
Email: CET@ADA-Firm.com
Counsel for Mrs. Crittenden

/s/ Pshon Barrett
Pshon Barrett (admitted pro hac vice)
ADA Group LLC
4001 Carmichael Road
Suite 570
Montgomery, Alabama 36106
Telephone: 334.819.4030
Email: Pshon.Barrett@ADA-Firm.com
Counsel for Mrs. Crittenden

## **CERTIFICATE OF SERVICE**

This is to certify that I have this day filed with the Clerk of Court the

aforementioned Third Amended Complaint for service of process by USPS mail or

electronic mail, postage prepaid and properly addressed this 12th day of June 2020

to the following:


James Irby
James Irby P.C.
120 East Tennessee Street
Florence, Alabama 35630
Telephone: 256-766-7778
Facsimile: 256-776-7845
Email: james@jamesirby.com
*Counsel for Quad Cities, Carbine, and Mr. Carbine*

Alabama Public Service Commission
Luther D. Bentley IV
100 North Union Street
Montgomery, Alabama 36104
Telephone: 334-242-5116
Facsimile: 334-242-0748
Email: luke.bentley@psc.alabama.gov
*Counsel for the APSC*


                                        */s/ L. Landis Sexton*
                                        L. Landis Sexton
                                        *Counsel for Mrs. Crittenden*

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## NORTHWESTERN DIVISION

|  |  |  |
|---|---|---|
| EVA BLAIR CRITTENDEN, | ) | |
| Plaintiffs, | ) | CIVIL ACTION NO. |
| | ) | |
| v. | ) | 3:19-cv-01242-LCB |
| QUAD CITIES TAXI & LIMO, | ) | |
| et al., | ) | |
| Defendants. | ) | |

---

# Exhibit A

# Quad Cities Taxi Tariff No. 2

---

**EXHIBIT A**

APSC NO. ___200_____

CERTIFICATE NO. _3941_____

### Carbine Enterprises, Inc. dba Quad Cities Taxi
(COMPANY NAME)

LOCAL PASSENGER TARIFF NO. ___2_____

CANCELS TARIFF NO. ___1____

Publishing Fares

For The
Transportation of Passengers

(1)     Between all points and places in Colbert and Lauderdale Counties; and

(2)     From all points in (1) above to all points in Alabama and return.

For the first mile of fraction thereof: $__7.00_____

   For each additional mile or fraction thereof: $___1.50_____

For wheelchair access there is a $25.00 load fee

Except as follows:

<u>WAITING TIME</u>

Passengers delaying Taxicabs at their request will be charged at the rate of $__45.00___ per hour or $__4.00__ for each TEN MINUTES or fraction thereof. A FIVE MINUTE delay will be permitted passengers without charge.

APPLICABLE ONLY ON ALABAMA INTRASTATE TRAFFIC.

Issued Date _09/21/16_____     Effective Date _10/21/16_____
                                         (30 days from issued date)

Issued by _Bryan Carbine_____
        (person preparing tariff)

Address _1212 Vine St_____     Telephone No. _(256_) 767-0220_____

      _Florence, AL 35630_____



APSC NO. ___100___

CERTIFICATE NO. _3941_

## QUAD CITIES TAXI & LIMOUSINE SERVICE

LOCAL PASSENGER TARIFF NO. ___1___

CANCELS TARIFF NO. _NEW_

**Publishing Fares**

For The
Transportation of Passengers

(1)  Between all points and places in Colbert and Lauderdale
     Counties; and

(2)  From all points in (1) above to all points in Alabama
     and return.

RESTRICTIONS:  Restricted against the transportation of non-
               emergency medical patients.

For the first mile of fraction thereof:  $_____7.00_____

For each additional mile or fraction thereof:  $___1.50_____

Except as follows:

### WAITING TIME

Passengers delaying Taxicabs at their request will be charged at the
rate of $ _24 00_ per hour or $ _4 00_ for each TEN MINUTES or
fraction thereof.  A FIVE MINUTE delay will be permitted passengers
without charge.

APPLICABLE ONLY ON ALABAMA INTRASTATE TRAFFIC.

Issued Date _2-26-09_____          Effective Date _3-26-09_____

Issued by _____
          (person preparing tariff)

Address   _Jenny F Carbins_____

          _1212 VINE ST._____    Telephone No. _(256) 767-0220_

          _FLORENCE ALA_____        FAX    256- 383- 1818

                     _35630_           CELL   256  810- 4433

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## NORTHWESTERN DIVISION

| | | |
|---|---|---|
| **EVA BLAIR CRITTENDEN,** | ) | |
| **Plaintiffs,** | ) | **CIVIL ACTION NO.** |
| | ) | |
| **v.** | ) | **3:19-cv-01242-LCB** |
| **QUAD CITIES TAXI & LIMO,** | ) | |
| **et al.,** | ) | |
| **Defendants.** | ) | |

---

# Exhibit B

# Quad Cities Taxi Tariff No. 3

---


APSC NO. 300

CERTIFICATE NO. 3941

Carbine Enterprises, Inc. d/b/a Quad Cities Taxi & Limousine Service
(COMPANY NAME)

LOCAL PASSENGER TARIFF NO. 3

CANCELS TARIFF NO. 2

**Publishing Fares**

For The
Transportation of Passengers

(1) Between all points and places in Colbert and Lauderdale Counties

(2) From all points in (1) above to all points in Alabama and return

For the first mile or fraction thereof, the rate is $7.00

For each additional mile or fraction thereof, the rate is $2.50
per mile or fraction.

For vehicles equipped with a wheelchair lift, there will be an
$18.00 charge to deploy the ramp.

For vehicles not equipped with a wheelchair ramp, there will not
be an additional charge to stow a wheelchair.  There will be no
charge for a passenger serving as an aid or caretaker to a
disabled person.  Tariff rates and charges will be applied in a
manner that complies with the Americans with Disabilities Act.

**Except as follows:**

<u>WAITING TIME</u>

Passengers delaying Taxicabs at their request will be charged at the rate of $33.00 per
hour or $3.00 for each minute over FIVE MINUTES or fraction thereof.  A FIVE MINUTE delay
will be permitted passengers without charge.

APPLICABLE ONLY ON ALABAMA INTRASTATE TRAFFIC.

Issued Date Jan. 28, 2020

Effective Date Feb. 28, 2020
(30 days from issued date)

Issued by  Bryan Carbine
           (person preparing tariff)

Address    1212 Vine Street

           Florence, AL 35630

Telephone No. (256) 767-0220